Filed 6/10/22  In re Skyla G. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SKYLA G., a Person Coming Under the Juvenile Court Law. | B314673 (Los Angeles County Super. Ct. No. 20CCJP01660) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] E.G. (Mother) appeals from the juvenile court's order terminating parental rights. She contends we must reverse the order because the court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the duty to make further inquiry regarding the possible Indian status of her daughter, Skyla G., under section 224.2, subdivision (e), California law implementing the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; (ICWA)). Mother argues DCFS failed to interview her brothers (Skyla's maternal uncles) as part of DCFS's further inquiry under section 224.2, subdivision (e), and remand is required for DCFS to conduct this further inquiry. She also contends DCFS's misspelling of the maternal grandmother's name on the ICWA notices DCFS sent to the tribes was prejudicial and requires remand for DCFS to comply with the notice requirements under ICWA and California law.

As explained more fully below, we conclude the omission of Skyla's maternal uncles from DCFS's further inquiry was harmless in light of the information DCFS had already received from Mother, Skyla's maternal grandmother, and Skyla's maternal aunt regarding Skyla's possible Indian status. The misspelling of the maternal grandmother's name on the ICWA notices does not require a remand for DCFS to send revised

_____

[1] Further statutory references are to the Welfare and Institutions Code.

2

ICWA notices. Although DCFS gave notice to the tribes of these dependency proceedings, the notice requirement was not triggered because there was no reason to know Skyla was an Indian child within the meaning of ICWA and California law. Moreover, the maternal grandmother had confirmed to DCFS that she was not affiliated with any tribe. Accordingly, we affirm the order and decline Mother's request that we remand the matter for DCFS to conduct a (second) further inquiry regarding Skyla's possible Indian status and send revised notices to the tribes.

## BACKGROUND[2]

In March 2020, Mother tested presumptively positive for amphetamines and methamphetamines at the hospital when she gave birth to Skyla. The record indicates Skyla also tested presumptively positive for these substances. Mother admitted to methamphetamine use during her pregnancy. Mother informed hospital staff that she lived with Skyla's maternal grandmother, and she "ha[d] the support of" the maternal grandmother, as well as Skyla's maternal aunt and uncles. A couple days after Skyla's birth, Mother consented to DCFS's removal of Skyla from her care. DCFS placed Skyla in a foster home.[3]

DCFS stated in its Detention Report that ICWA "does or may apply." A DCFS social worker interviewed Mother on March 19, 2020, and Mother reported "her maternal great grandmother

_____

[2] We include here only the facts related to the issue on appeal: the juvenile court's and DCFS's compliance with California law implementing ICWA.

[3] Skyla's father was not identified during the proceedings reflected in the record before us.

[Skyla's great-great-grandmother] is Choctaw Indian and currently lives on a reservation in Oklahoma." The same day, the social worker also interviewed Skyla's maternal aunt, S.R. (Mother's sister), and Skyla's maternal grandmother, O.J. (Mother's mother). S.R. "denied Native American Heritage [*sic*] and stated she was unsure who [M]other was referring to with Choctaw Indian heritage. [S.R.] stated maternal great grandmother is deceased and was not a member of a tribe." O.J. "stated [M]other was unclear as to the part of the family that has Choctaw heritage. Ms. J[.] stated they have distant family who live in Mississippi on a reservation." As set forth in the Detention Report, DCFS determined it could not make an emergency placement of Skyla with either S.R. or O.J. based on their "CLETS [California Law Enforcement Telecommunications System] search results."

On March 23, 2020, DCFS filed a dependency petition under section 300, subdivision (b), alleging Skyla's positive toxicology screen for amphetamines and methamphetamines, and Mother's history of and current drug abuse, endangered Skyla's physical health and safety and placed Skyla at risk of serious physical harm, damage, and danger. DCFS attached to the petition form ICWA-010(A), Indian Child Inquiry Attachment, and checked the box stating, "The child may have Indian ancestry," based on Mother's statements to the social worker on March 19, 2020 (summarized above).

On March 24, 2020, the date of the detention hearing, Mother completed and signed form ICWA-020, Parental Notification of Indian Status. Mother checked the box stating, "I may have Indian ancestry." Handwritten next to this entry is the word "Choctaw" and the name and telephone number of Skyla's

4

maternal grandmother O.J., who DCFS had already interviewed about Skyla's potential Indian ancestry.

Mother was present at the March 24, 2020 detention hearing. The juvenile court acknowledged it had received form ICWA-020 from Mother, and the court confirmed the information on the form. The court asked Mother to spell the first name of Skyla's maternal grandmother, and Mother did. The court asked Mother if she was registered with any tribe, and Mother said she was not. The court stated: "[DCFS] is ordered to investigate Indian ancestry. The social study report is to include details regarding the ICWA investigation. [¶] [DCFS] is ordered to notice all federally registered Choctaw tribes, and the Jurisdiction[/]Disposition Report is to include copies of details regarding the ICWA investigation, copies of the ICWA notices, return receipts, and responses from tribes." The court found DCFS made a prima facie showing that Skyla was a person described by section 300, and the court detained Skyla from Mother. Skyla remained placed in the same foster home.

DCFS stated in its Jurisdiction/Disposition Report that ICWA "does or may apply." On March 27, 2020, a dependency investigator interviewed Mother, Skyla's maternal aunt S.R., and Skyla's maternal grandmother O.J. about Skyla's possible Indian status. Mother stated Skyla's maternal great-great-grandmother "was possibly affiliated with the Choctaw tribe." S.R. "denied Native American Heritage [*sic*]" and stated Skyla's great-grandmother "may have had Indian heritage," but S.R. "did not specify which tribe." O.J. stated she was "not a member of any Indian tribe" and reported Skyla's great-grandmother "may have had Indian heritage," but O.J. "did not specify which tribe."

Mother also told the dependency investigator that she had five siblings who lived in Southern California, and she had a relationship with all of them. Mother also reported that her parents separated when she was young, and she maintained a relationship with both parents.

DCFS sent notice of the adjudication hearing (form ICWA-030, Notice of Child Custody Proceeding for Indian Child) by certified mail, with return receipt requested, to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, the Choctaw Nation of Oklahoma, the Jena Band of Choctaw Indians, and the Mississippi Band of Choctaw Indians. The notices included the following information, in pertinent part: Skyla's first and last name and date and place of birth; Mother's first and last name, date and place of birth, and current and former addresses; Skyla's maternal grandmother's first and last name (both, apparently misspelled), date and place of birth, and current address; Skyla's maternal grandfather's first and last name and date and country of birth; Skyla's maternal great-grandmother's first and last name, date and place of birth, and date and place of death; and Skyla's maternal great-grandfather's first and last name, date and place of birth, and date and place of death. For each of Skyla's relatives, the ICWA notices listed the tribe or band as Choctaw Nation of Oklahoma, Jena Band of Choctaw Indians, and Mississippi Band of Choctaw Indians.[4]

---

[4] Mother does not claim her paternal relatives have Indian ancestry. Nor does she contend DCFS should have interviewed any of her paternal relatives as part of its further inquiry regarding Skyla's possible Indian status.

6

In a Supplemental Report, dated July 16, 2020, DCFS stated ICWA "does or may apply." DCFS explained it sent two sets of notices by certified mail, with return receipt requested, to the BIA, the Secretary of the Interior, the Choctaw Nation of Oklahoma, the Jena Band of Choctaw Indians, and the Mississippi Band of Choctaw Indians—one for the May 14, 2020 adjudication hearing, and one for a July 16, 2020 rescheduled adjudication hearing.[5] DCFS reported that it received return receipts for all the notices it sent, except the second notice it sent to the Secretary of the Interior.

DCFS attached to the July 16, 2020 Supplemental Report letters it received from the tribes. On June 5, 2020, the Choctaw Nation of Oklahoma sent DCFS a letter stating it researched its records, using the information DCFS provided, and it was "unable to establish Indian heritage" for Skyla. The letter also stated the Choctaw Nation of Oklahoma determined ICWA did not apply at that time. The letter further explained: "The Choctaw Nation of Oklahoma shall consist of all Choctaw Indians by blood whose names appear on the final rolls of the Choctaw Nation approved pursuant to Section 2 of the Act of April 26, 1906 (34 Stat. 136) and their lineal descendants."

On April 13 and June 2, 2020, the Mississippi Band of Choctaw Indians sent DCFS identical letters stating it researched its enrollment records, using the information DCFS

---

[5] DCFS repeated the misspelling of Skyla's maternal grandmother's name on the second set of ICWA notices it sent. There is no indication in the record that anyone (including Mother) raised the misspelling with DCFS or the juvenile court or requested a correction.

provided, and it determined Skyla and Mother are not enrolled members and "are not eligible for membership with this tribe." DCFS did not receive a letter from the Jena Band of Choctaw Indians.

The adjudication/disposition hearing did not go forward on July 16, 2020; it was continued to October 7, 2020. Mother was not present at the October 7, 2020 adjudication/disposition hearing. DCFS's counsel asked the juvenile court to make a finding that ICWA did not apply, as it had been more than 60 days since DCFS sent the ICWA notices. The court stated: "The court does intend to make the ICWA finding that the court has no reason to believe this is a case governed by [ICWA]." The record does not reflect, however, that the court actually made an ICWA finding. The court sustained the allegations against Mother in the dependency petition, as summarized above. The court declared Skyla a dependent of the court, removed her from Mother's custody, and granted Mother reunification services and monitored visitation.

In a Status Review Report, filed on March 18, 2021, DCFS requested the juvenile court make a finding that ICWA does not apply, based on the ICWA notices it sent and the responses it received. DCFS reported that Mother failed to show for all drug tests (19 tests) during the period of supervision from October 20, 2020 to February 22, 2021; and she had not informed DCFS that she had enrolled in a drug and alcohol treatment program, which, along with testing, was required under her case plan. Mother had not attempted to schedule a visit with Skyla since the child was detained from her in March 2020. Skyla remained in the same foster home where DCFS placed her prior to DCFS filing the dependency petition.

On April 6, 2021, the juvenile court held a six-month review hearing. Mother was not present. The court referenced the letters DCFS received from the tribes and found ICWA did not apply. The court stated in its minute order: "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA." The court found by clear and convincing evidence that returning Skyla to Mother's custody would create a substantial risk of detriment to Skyla. The court also found Mother's progress in her case plan had been poor. The court terminated Mother's reunification services and set a section 366.26 permanency planning hearing.

In DCFS's report for the section 366.26 hearing, filed on July 15, 2021, DCFS reported Mother called the foster Mother twice to inquire about Skyla: once in early April 2020, when Skyla was two weeks old, and once in May 2021, when Skyla was 14 months old. Mother had not requested any in-person visits. She had one, five-minute FaceTime call with Skyla on May 21, 2021. DCFS also stated in the report: "On 07/09/2021, the foster mother reported she has not been contacted by the maternal grandmother, or the maternal aunt, or by the maternal uncle." DCFS reported that Skyla's caregiver—the same foster mother who had cared for the child since she was three days old—wanted to adopt Skyla. DCFS recommended the juvenile court terminate parental rights and select adoption as Skyla's permanent plan.

Mother was not present at the August 10, 2021 section 366.26 permanency planning hearing. Her counsel explained she had no "direction from Mother," but counsel made a general objection to termination of parental rights on Mother's behalf. Counsel did not argue that an exception to termination of

9

parental rights under section 366.26 applied. Counsel for Skyla and DCFS urged the juvenile court to terminate Mother's parental rights. The court found by clear and convincing evidence that Skyla was adoptable and there were no legal impediments to adoption. The court also found no exception to adoption applied. Accordingly, the court terminated parental rights and selected adoption as Skyla's permanent plan. The court designated the foster mother as Skyla's prospective adoptive parent.

## DISCUSSION

### I. Applicable Law

Under ICWA, an "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

DCFS and the juvenile court "have an affirmative and continuing duty to inquire whether a child" involved in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a).) When DCFS detains a child and places that child in foster care, its duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of

10

eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2).)

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and order the parents to complete form ICWA-020 (Parental Notification of Indian Status). (Cal. Rules of Court, rule 5.481(a)(2)(C).)

If the juvenile court or social worker "has reason to believe that an Indian child is involved in a proceeding," based on the initial inquiry described above, the court or social worker "shall make further inquiry regarding the possible Indian status of the child," including, but not limited to: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying and contacting tribes; and (3) contacting tribes and others "that may reasonably be expected to have information regarding the child's membership status, or eligibility." (§ 224.2, subd. (e).) There is reason to believe a child is an Indian child if there is information suggesting that either the child or the parent is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).) "Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reasons to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)," which we set forth below. (*Ibid.*)

11

ICWA notice is required if DCFS or the juvenile court knows or has reason to know a child is an Indian child under any of the circumstances described in section 224.2, subdivision (d). (25 U.S.C. § 1912(a); § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(b)(1).)  Under subdivision (d), "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances:

"(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.

"(2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.

"(3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child.

"(4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.

"(5) The court is informed that the child is or has been a ward of a tribal court.

"(6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

II.     **Analysis**

Mother does not contend DCFS's initial inquiry under section 224.2, subdivision (b) was inadequate.  She contends DCFS's initial inquiry provided "reason to believe" Skyla is an Indian child under section 224.2, subdivision (e)(1), so DCFS was

12

required to conduct a further inquiry, which would include interviewing extended family members.[6] As Mother acknowledges, DCFS reinterviewed Mother, Skyla's maternal grandmother, and Skyla's maternal aunt as part of its further inquiry. As Mother points out, there is no indication in the record that DCFS interviewed Skyla's maternal uncles. Mother argues DCFS's failure to interview Skyla's maternal uncles as part of its further inquiry was prejudicial because information from them "was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

_____

[6] DCFS argues Mother cannot raise her ICWA claims on appeal from the order terminating parental rights as "the juvenile court had no evidence before it indicating DCFS failed to adequately comply with its further inquiry duties" because "at the section 366.26 hearing, the juvenile court was not offered, and so did not consider, any evidence relevant to the issue of whether DCFS failed to comply with its further inquiry duties." We reject this argument. As DCFS acknowledges, in *In re Isaiah W.* (2016) 1 Cal.5th 1, our Supreme Court held a parent may "challenge a finding of ICWA's inapplicability in an appeal from [a] subsequent order, even if she did not raise such a challenge in an appeal from the initial order." (*Id*. at p. 6.) And, in any event, we note that although the parties did not introduce into evidence at the section 366.26 hearing the relevant reports and ICWA documents, the juvenile court's minute order from the section 366.26 hearing states that in addition to the documents introduced by DCFS, the court took "judicial notice of the legal file" and "read, considered, and admit[ted] into evidence the social worker's reports and any other information reviewed," which included the pertinent information related to ICWA compliance.

When Skyla was born, Mother told hospital staff her support system included Skyla's maternal grandmother, maternal aunt, and maternal uncles. The maternal uncles are not identified by name in the record.[7] To the extent DCFS was required to interview the maternal uncles as part of a duty of further inquiry under section 224.2, subdivision (e), the omission was harmless for the reasons explained below.

As Mother points out, the purpose of interviewing extended family members as part of the further inquiry is "to gather the information required in paragraph (5) of subdivision (a) of Section 224.3." (§ 224.2, subd. (e)(2)(A).) Such information includes: "All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).) Mother does not argue any of the pertinent information specified in section 224.3, subdivision (a)(5) was missing after DCFS's interviews with Mother, Skyla's maternal grandmother, and Skyla's maternal aunt.

It is not clear from Mother's appellate briefing what additional information she believes the maternal uncles could have provided that "was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) She asserts the maternal uncles "may

---

[7] During pendency of these dependency proceedings, Mother informed DCFS that one of Skyla's maternal uncles passed away.

have given clarifying information" regarding the information already provided by Skyla's maternal grandmother and maternal aunt, such as the maternal grandmother's statement that "distant family" lived on a reservation in Mississippi. Skyla's maternal grandmother provided information about Skyla's direct lineal ancestors. Mother does not explain how additional information about "distant family"—as opposed to direct lineal ancestors already mentioned—might bear meaningfully upon whether Skyla is an Indian child. Thus, Mother has not demonstrated prejudice by omission of Skyla's maternal uncles as part of a further inquiry under section 224.2, subdivision (e).[8]

Notice to the tribes of the dependency proceedings was not required here because there is no reason to know Skyla is an Indian child under any of the circumstances set forth in section 224.2, subdivision (d). (§ 224.3, subd. (a).) Mother does not argue in her appellate briefing that any of the enumerated circumstances (listed above) apply to Skyla. Therefore, we need not address Mother's claim notice to the tribes was inadequate because DCFS misspelled Skyla's maternal grandmother's name on the ICWA notices it sent to the BIA, the Secretary of the Interior, and the tribes. We note that Skyla's maternal grandmother confirmed to DCFS that she was not affiliated with any tribe, so it is not clear how the misspelling of her name could have misled the tribes' and the federal government's inquiries into Skyla's possible Indian status.

For the foregoing reasons, we decline Mother's request that we remand the matter for DCFS to conduct a (second) further

---

[8] Mother does not otherwise challenge the sufficiency of the evidence supporting the juvenile court's ICWA findings.

15

inquiry regarding Skyla's possible Indian status and send revised notices to the tribes.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.